UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| EMZILE LEE WILBURN, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:06CV01828 ERW |
| CORRECTIONAL MEDICAL SYSTEMS and SUSAN SINGER, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants Correctional Medical Services, Inc. and Dr. Singer's Motion for Summary Judgment [doc. #43].

**I.    PROCEDURAL BACKGROUND**

While his criminal trial was pending, Plaintiff was confined as a pre-trial detainee at the St. Louis City Justice Center ("CJC"). Plaintiff alleges that his constitutional rights were violated as a pre-trial detainee at the CJC. Plaintiff's Amended Complaint was brought against Correctional Medical Services, Inc. ("Defendant CMS") and Dr. Susan Singer ("Defendant Singer") (collectively, "Defendants") under 42 U.S.C. § 1983.

Defendants filed the pending Motion for Summary Judgment on February 6, 2008, and on March 3, 2008, the Court noted that Plaintiff had failed to file a response to Defendants' Motion. The Court ordered Plaintiff to show cause, no later than March 17, 2008, why Defendants' Motion should not be granted. As of the date of this Order, Plaintiff has failed to respond in any way to Defendants' Motion, and the time period for responding has expired.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## II.   BACKGROUND FACTS[1]

Defendant Singer is an independent contractor physician employed by Defendant CMS, and she provides medical care and treatment to inmates confined at the CJC.  A copy of Plaintiff's medical and mental health records was submitted to the Court with the pending Motion.  These documents record the care provided by Defendant Singer and the course of treatment she recommended for Plaintiff's medical needs.  The Court will not restate Plaintiff's entire medical history, but will summarize some of the relevant events.

On September 21, 2005,  Plaintiff was admitted as a pretrial detainee at the CJC.  On this date Plaintiff provided his medical and mental health history to prison medical staff.  Plaintiff reported a prior history of sleep apnea, diabetes, hypertension, pre-existing right knee injury and a psychiatric history of depression.  In response to this information, Defendant Singer ordered that Plaintiff to receive certain prescriptions to treat his pre-existing diabetic and hypertensive conditions.

Following a visit on September 28, 2005, Defendant Singer directed Plaintiff to follow a 2,800 calorie diabetic diet, ordered a c-pap, ordered Plaintiff's transfer to the "c-pap cell," obtained a urinalysis report and blood work, and prescribed medication to treat Plaintiff's diabetes and hypertension.[2]  Defendant Singer also admitted Plaintiff into two of the Prison's Chronic Care Clinics ("CCC") for monitoring and treating his diabetes and hypertension.

---

[1] The Court's recitation of the facts is taken from Defendants CMS and Dr. Singers' Statement of Uncontroverted Material Facts in Support of Their Motion for Summary Judgment [doc. #43-3].

[2] C-pap stands for "Continuous Positive Airway Pressure," which describes a method of respiratory ventilation used in the treatment of sleep apnea.  The c-pap machine works by blowing air at a specific pressure to keep the patient's airway open.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

On October 7, 2005, Defendant Singer saw Plaintiff in his housing unit. Plaintiff had elevated blood pressure, abdominal pain that radiated to his left chest, and dizziness. Medical staff administered nitroglycerin and oxygen. Plaintiff was transferred to the medical unit and then to Barnes Jewish Hospital for emergency medical care. Plaintiff remained at Barnes Jewish Hospital until October 12, 2005, at which time he was found to be "fit for confinement." Plaintiff was discharged with special instructions and medications for his heart, blood pressure and diabetes.

On October 12, 2005, Defendant Singer admitted Plaintiff to the Transition Care Unit for continued post-hospital monitoring and treatment of his diabetes, hypertension, obesity, sleep apnea, and post-hospitalization recovery. While in the Transition Care Unit, Defendant Singer saw Plaintiff on October 14, 2005. At this time Plaintiff complained of nasal dryness, dry skin on his face and feet, shortness of breath, one short episode of left chest pain, and nausea. Defendant Singer noted that Plaintiff's hypertension and diabetes were stable, ordered the continuing monitoring of Plaintiff's blood sugars, and prescribed lotrimin cream to treat Plaintiff's foot fungus.

Plaintiff was monitored in the Transition Care Unit until October 17, 2005, when he was discharged to a housing unit. The medical staff saw Plaintiff on seven separate occasions on October 17, 2005 and October 18, 2005. Plaintiff reported no significant complaints at any of these visits, and the medical staff monitored his vital signs, blood pressure, blood sugar, and overall medical condition.

On October 20, 2005, Plaintiff did not pick up his medication, and a member of the medical staff checked on Plaintiff, who reported that he was "not feeling well." Plaintiff's blood sugar was checked and he was referred to Defendant Singer for follow-up care. Defendant Singer

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

met with Plaintiff on October 21, 2005, and Plaintiff complained of abdominal pain and requested that his blood pressure be checked. Plaintiff stated that he had not been eating or drinking and had not had a bowel movement in 3-4 days. Defendant Singer performed a physical examination, checked Plaintiff's blood sugars, and noted Plaintiff was in no physical distress. However, Plaintiff was crying and saying "I don't belong here." Defendant Singer assessed Plaintiff with situational anxiety/depression and constipation, and Defendant Singer referred Plaintiff to the prison psychiatrist. Plaintiff was seen by the prison psychiatrist and mental health staff on October 24, 2005, October 29, 2005 and November 19, 2005.

On November 21, 2005, Defendant Singer saw Plaintiff for complaints of coughing thick mucus, dizziness, fatigue, dark urine and to request a humidifier. Defendant Singer diagnosed Plaintiff with chronic sinusitis, glycosuria, and protenuria. Defendant Singer ordered a dip urinalysis, follow-up in the Chronic Care Clinics for early December, increased fluids, and continuation of his medications.

On January 17, 2006, Defendant Singer saw Plaintiff in the Hypertension Chronic Care Clinic. Plaintiff complained of dry/bleeding nose, right ankle swelling, occasional chest pains, frequent headaches, and blurred vision. Defendant Singer prescribed Plaintiff 325mg of Tylenol, increased the dosage of other medications Plaintiff was already talking, and ordered the continued use of the humidifier for his c-pap.

On February 15, 2006, Plaintiff refused to allow the medical staff to check his blood pressure or Accu-check his blood sugar levels because he said that his finger was sore. Plaintiff refused these checks three times. As a result, Defendant Singer discontinued Plaintiff's daily Accu-checks and ordered the checks to be conducted twice per day on Tuesday and Friday.

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

On March 23, 2006, Defendant Singer saw and assessed Plaintiff for complaints of nausea, vomiting, right shoulder and chest pain, and shortness of breath. Defendant Singer took Plaintiff's vitals and assessed Plaintiff with peptic ulcer disease, hypertension, and controlled diabetes. Defendant Singer prescribed 50mg of Phanergan, and requested a follow-up appointment. Defendant Singer saw Plaintiff several times in the months of April and May, 2006.

On June 8, 2006, Defendant Singer saw Plaintiff in the Hypertension Chronic Care Center. Plaintiff complained of stiffness, his right arm aching, numbness in his fingers and persistent coughing. Dr. Singer entered new orders concerning Plaintiff's medications and a follow-up appointment. Later that day, Plaintiff complained of chest pain, vomiting and shortness of breath. Defendant Singer was contacted by telephone, and she ordered a course of treatment, and that Plaintiff be transferred to Barnes Jewish Hospital if his symptoms did not resolve after that treatment. Plaintiff was transported to Barnes Jewish Hospital, where he was monitored and received extensive diagnostic testing. The test results did not report any significant findings, and Plaintiff was discharged on June 8, 2006.

On November 2, 2006, Defendant Singer referred Plaintiff to the Anheuser Busch Eye Institute for an eye exam and evaluation. Defendant Singer was advised that the records from this examination reported "glaucoma suspect" and blurred vision secondary to no eyeglasses. The Anheuser Busch Eye Institute records do not report, and no eye doctor or specialist has ever advised Defendant Singer, that Plaintiff needed eye surgery or surgical intervention. The Anheuser Busch Eye Institute records only indicate a recommendation for a follow-up appointment in November, 2007.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

On December 5, 2006, Plaintiff was brought to see Defendant Singer by custody staff. Plaintiff was clutching his chest, breathing and alert. Plaintiff reported that "they were going to stab his cellie, and [Plaintiff] wasn't going to let 'em." Following an assessment and examination, Defendant Singer ordered that Plaintiff be transferred to the Barnes Jewish Hospital Emergency Room. Plaintiff underwent diagnostic testing and lab work at Barnes Jewish Hospital. Plaintiff's SPECT test reported no significant changes when compared to Plaintiff's October 2006 test. Plaintiff was discharged with a diagnosis of chest pain "with unknown etiology." After returning to the CJC, Plaintiff refused his medications for three days, and was placed on full suicide watch by the medical staff. The medical staff continued their care of Plaintiff's depression and mental health needs, and saw Plaintiff on a daily basis from December 18, 2006 through December 21, 2006. This action was filed on December 27, 2006.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III. DISCUSSION

Plaintiff alleges that Defendant Singer was deliberately indifferent to Plaintiff's serious medical needs, and that Defendant CMS is liable for endorsing Defendant Singer despite numerous complaints against her. The Court will address the claims against Defendant Singer and Defendant CMS separately.

### A. DEFENDANT SINGER: MEDICAL NEGLIGENCE

Plaintiff seeks to recover from Defendant Singer for medical negligence under Mo. Rev. Stat. § 538.225. To establish a claim for medical negligence, a plaintiff must meet various

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

statutory requirements as well as demonstrate that the physician's "actions (1) violated the applicable standard of care; (2) were performed negligently; and (3) injured [Plaintiff]." *McLaughlin v. Griffith*, 220 S.W.3d 319, 321 (Mo. Ct. App. 2007).

The Court initially notes that Plaintiff's claim for medical negligence fails as Plaintiff has not complied with the statutory requirements for a medical negligence claim. *See* Mo. Rev. Stat. § 538.225. This statute requires that a Plaintiff "file an affidavit with the court stating that he or she has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful health care provider would have under similar circumstances . . ." Mo. Rev. Stat. § 538.225(1). If a Plaintiff fails to submit this affidavit, the Court shall "dismiss the action . . . without prejudice." Plaintiff has failed to comply with the requirements enumerated in this statute, and Plaintiff's claim for medical negligence may be dismissed without prejudice. However, for the reasons discussed below, Plaintiff's action will be dismissed with prejudice.

Plaintiff's claim for medical negligence fails because Plaintiff has failed to produce sufficient evidence to enable a jury to return a verdict in Plaintiff's favor. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. As discussed above, the initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Defendant Singer has satisfied this burden by submitting to the Court a voluminous "Statement of Uncontroverted Material Facts" supporting the pending Motion. These facts demonstrate the extensive medical care provided to Plaintiff.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Defendant Singer has demonstrated that no genuine dispute factual exists, and the burden now shifts to Plaintiff, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 256-57. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991). Plaintiff has not opposed this motion, and has therefore failed to demonstrate the existence of any genuine dispute regarding these facts. The Court must grant summary judgment for Plaintiff's claim of medical negligence.

### A. DEFENDANT SINGER: 42 U.S.C. § 1983

Plaintiff seeks to recover from Defendant Singer for the violation of his constitutional rights. The Supreme Court has held that under the due process clause of the Fourteenth Amendment, a pretrial detainee holds at least the same level of constitutional protection that is enjoyed by prisoners under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

To determine if a prison doctor has been deliberately indifferent, the Court must consider "both an objective an subjective component." *Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001). The objective component requires a plaintiff to demonstrate that he "suffered objectively serious medical needs," while the subjective component of the claim requires that a plaintiff demonstrate "that the prison officials actually knew of but disregarded those needs." *Id.* The doctor's knowledge of a medical need can be established circumstantially, and is established if the need "is so obvious that even a lay person would easily recognize the necessity for a doctor's

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

The Eighth Amendment does not limit physicians from "exercis[ing] their independent medical judgment." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (*quoting Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Inmates do not a have constitutional right to any particular type of treatment. *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996). A mere disagreement with the course of treatment or a physician's medical diagnosis fails to state a claim under the Eighth Amendment. *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990); *Lair v. Oglesby*, 859 F.2d 605, 606 (8th Cir. 1988).

Plaintiff has not responded to the pending Motion and has produced no "evidence to support his claim that the treatment provided . . . [for his various medical complaints] was constitutionally inadequate." *Meuir*, 487 F.3d at 1119. Defendants have provided the Court with comprehensive medical records which indicate that treatment was provided for Plaintiff's many complaints. The undisputed facts demonstrate that Plaintiff's conditions were diagnosed by Defendant Singer, and that Defendant Singer treated Plaintiff for his complaints. The medical record demonstrates that Plaintiff was seen regularly by Defendant Singer and the rest of the medical staff for his complaints. Plaintiff has not opposed this motion and has therefore failed to demonstrate the existence of any genuine dispute regarding these facts. Defendant is entitled to summary judgment on this claim.

## B.     DEFENDANT CMS

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff alleges that Defendant CMS is responsible for the violation of his Eighth Amendment rights because Defendant CMS "endorse[d] Dr. Susan Singer regardless of numerous complaints." The Court finds that Defendant CMS is entitled to summary judgment on this claim.

Defendant CMS is a private corporation, and Plaintiff alleges that it is liable for the conduct of it's employee, Defendant Singer. However, Defendant CMS cannot be liable under the theory of *respondeat superior* as "[r]espondeat superior is not a basis for liability under 42 U.S.C. § 1983." *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (internal citations omitted). A corporation can "only be held liable under § 1983 for its own unconstitutional policies," customs or actions that injure a plaintiff if that corporation is "acting under color of state law." *Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 694 (1978); *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Even assuming that Defendant CMS was acting under color of state law, Plaintiff's claim fails because Plaintiff did not allege any such policy, custom, or action in his complaint. Additionally, Plaintiff has not responded to the pending Motion and has produced no facts demonstrating the existence of any policy, custom or action on the part of Defendant CMS that caused his alleged injuries. Defendant CMS is entitled to summary judgment.

**IV.  CONCLUSION**

Plaintiff has failed to show that there is sufficient evidence to enable a jury to return a verdict in his favor on his claims against Defendants. *See Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. As such, Defendants' Motion for Summary Judgment is granted.

Accordingly,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**IT IS HEREBY ORDERED** that Defendants Correctional Medical Services, Inc. and Dr. Singer's Motion for Summary Judgment [doc. #43] is **GRANTED.**

Dated this <u>8th</u> day of <u>May</u>, 2008.

*E. Richard Webber* (signature)
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com